■ GENERAL ELECTRIC TECHNICAL SERVICES COMPANY, INC., Appellant, v JUAN J. PEREZ, Respondent. (And Two Other Related Actions.)—Per Curiam. Appeal from that part of an order of the Supreme Court (Dier, J.), entered September 26, 1988 in Schenectady County, which granted defendant's motion to vacate a default judgment entered against him and consolidated the three actions.

Plaintiff engaged in work performed outside the United States. Defendant, an employee of plaintiff from February 1980 until his termination in October 1986, was transferred to Venezuela to work there and in other South American and Caribbean countries. Plaintiff adopted a tax equalization program effective January 1, 1983 for employees subject to the

income tax jurisdiction of the United States and who performed work for plaintiff outside the United States. Under Internal Revenue Code § 911 (26 USC § 911), persons who are overseas at least 11 months out of any consecutive 12-month period or who have a bona fide residence in a foreign country are entitled to exclude from their gross income a maximum of $70,000 of foreign earned income. Employees working outside the United States for less than 330 days do not qualify for the exclusion from gross income and would have to pay Federal income taxes. Under the program, a hypothetical tax is computed on a person's base salary, overtime pay, private source income or loss, and actual exemptions and deductions. This hypothetical tax is called a tax norm. Employees were required to reimburse plaintiff for the difference between the tax norm and actual taxes, if any, on their income from plaintiff.

Information concerning this tax program was given to all employees at the end of 1982 and early 1983. Defendant was at an employee informational meeting held in Maracaibo, Venezuela, in December 1982 where the tax program was explained. However, defendant claims he did not understand what the company officials were talking about. Defendant did not comply with this tax equalization program and ultimately refused to pay the amount he owed under the program. Thereafter, on September 30, 1986, a meeting was held with defendant at plaintiff's headquarters in Schenectady County. Defendant was served with a summons with notice at the meeting. Claude Breese, an attorney for plaintiff, stated that he informed defendant that service of the summons with notice constituted the beginning of a lawsuit and that he should seek legal advice. Defendant said he does not remember being so advised.

In October 1986, defendant's employment was terminated for failure to report to a new work assignment. He moved to Puerto Rico in December 1986. He claimed he was due severance pay and obtained a settlement of that claim in the amount of $21,739 in March 1987. Defendant did not appear in the legal action and in September 1987 a default judgment was entered against him in Schenectady County. Plaintiff then had defendant's bank account in a Kings County bank restrained. On November 10, 1987 defendant requested that the execution be withheld for one week. In December 1987 a property execution was forwarded to the Sheriff of Kings County.

Supreme Court, *inter alia,* granted defendant's motion to

vacate the default judgment finding, *inter alia,* that "defendant has sufficiently shown excusable default including lack of willfullness and an excuse for his default as well as a meritorious defense". This appeal by plaintiff from so much of the order as granted defendant's motion and granted consolidation ensued.*

A party seeking to vacate a default judgment on the ground of excusable default (CPLR 5015 [a] [1]) must demonstrate both a reasonable excuse for the default and a meritorious defense *(see, Levy v Blue Cross & Blue Shield,* 124 AD2d 900, 901; *Passalacqua v Banat,* 103 AD2d 769). If there is a failure to establish either a reasonable excuse or a meritorious defense, it is an improvident exercise of discretion to vacate the default judgment *(see, Rondout Val. Publ. Co. v AM Intl.,* 93 AD2d 912). The affidavit presented on behalf of defendant establishes a meritorious defense. The issue remaining is whether defendant has shown a reasonable excuse for his delay in responding to the summons with notice.

Defendant's first excuse, that his foreign residency and employment accounted for his delay, is without merit. Defendant did not show his whereabouts from the time he received the summons in Schenectady County until he became a resident of Puerto Rico two months later. He was already in default at the time he took up residency in Puerto Rico. Nor does defendant set forth any facts to show that he could not have taken steps to protect his legal interests before leaving the country.

Defendant's next excuse, that he misunderstood the laws of New York and did not realize that an attorney was needed to represent him, is rejected. Defendant offers no factual specifics to support his conclusory assertion nor does he state in what way he misunderstood the laws. However, Breese's affidavit, in which he states that he personally advised defendant to seek legal advice, belies this claim. The affidavit of Peter Huhtanen supports the statement of Breese. Defendant merely says he has no recollection of Breese so advising him. Further, "[t]he fact that he may have made erroneous assumptions regarding the validity of the action and the need to defend is an insufficient excuse to permit vacatur of the judgment entered against him" *(Passalacqua v Banat, supra).*

Defendant's final excuse, that the parties were conducting settlement negotiations, is also without merit. Defendant made but one telephone call to plaintiff's attorney after the

---

* Plaintiff raises no issue in its brief concerning the consolidation order.

summons with notice was served when defendant was already over 13 months in default. Minimal efforts to settle a lawsuit do not excuse delay in answering *(see, MacFarland Bldrs. v Raymond E. Kelley, Inc.,* 107 AD2d 972, 973).

Defendant's assumption that the settlement of his severance benefit claim with representatives of plaintiff in Venezuela disposed of the instant claim is without basis in fact and an unwarranted assumption *(see, Levy v Blue Cross & Blue Shield,* 124 AD2d 900, *supra).*

We do find persuasive, however, defendant's argument that plaintiff's damage claim was not for a sum certain or one which by computation can be made certain and, thus, entry of the default judgment by the County Clerk without an inquest was error by virtue of CPLR 3215 (a). A clerk may only enter a default judgment when the damages sought are for a sum certain or for a sum which can, by computation, be made certain (CPLR 3215 [a]). "The term 'sum certain' * * * contemplates a situation in which * * * there can be no dispute as to the amount due, as in actions on money judgments and negotiable instruments" *(Reynolds Sec. v Underwriters Bank & Trust Co.,* 44 NY2d 568, 572). If anything more than arithmetic is called for, application must be made to the court for the default judgment (Siegel, NY Prac § 293, at 347).

Here, the amount of defendant's liability is uncertain. For 1983 and 1984, plaintiff purports to have relied upon defendant's actual returns, which defendant avers were not made available to plaintiff. With respect to 1985 and 1986, the damage calculation depends upon whether plaintiff uses defendant's actual tax deductions or the 16% standard tax deduction. The clerk does not have authority to determine whether plaintiff was justified in relying on the alleged 1983 and 1984 returns, or whether plaintiff properly resorted to the standard deduction for the years 1985 and 1986. Accordingly, the matter should be remitted to Supreme Court for an inquest as to damages.

Order modified, on the facts, without costs, by reversing so much thereof as granted defendant's motion to vacate the default judgment upon a showing of excusable default; motion to vacate the default judgment granted and matter remitted to the Supreme Court for an inquest on damages; and, as so modified, affirmed. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Mercure, JJ., concur.